IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DANIEL A. DANHAUER and DEBORAH SUPIS, individually and as co-trustees of the DANIEL J. DANHAUER DECLARATION OF TRUST DATED NOVEMBER 15, 1991, as amended, <br><br> Plaintiffs, <br><br> v. <br><br> MORGAN STANLEY SMITH BARNEY, LLC, <br><br> Defendant. | Case No. 14 C 7938 <br><br> Judge Joan H. Lefkow |

## ORDER

On August 6, 2014, plaintiffs filed suit in the Circuit Court of Cook County alleging three common law claims: breach of fiduciary duty, breach of contract, and tortious interference with prospective economic advantage. (Dkt. 1-1.) On October 10, defendant removed the suit to federal court.[1] (Dkt. 1.) Before the court is defendant's motion to dismiss for failure to state a claim. (Dkt. 10.) For the reasons stated below, defendant's motion is granted. See Statement.

## STATEMENT

### I. Background[2]

Plaintiffs Daniel A. Danhauer and Deborah Supis are brother and sister. (*See* dkt. 1-1 ("Compl.").) In 1991, plaintiffs' father, Daniel J. Danhauer, executed the Daniel J. Danhauer Declaration of Trust Dated November 15, 1991. (*Id.* ¶ 9.) The trust names plaintiffs as beneficiaries. (*Id.* ¶ 20.)

Seventeen years later, in late 2008, plaintiffs' father named the trust as the beneficiary of his IRA account. (*Id.* ¶ 10.) Thus, plaintiffs' father designated the money in the IRA account to go to the trust and the money in the trust to go to plaintiffs. The IRA account had an approximate value of $110,000.00 and was held by Morgan Stanley Smith Barney, LLC

---

[1] The court has jurisdiction under 28 U.S.C. § 1332(a). Venue is proper under 28 U.S.C. § 1391(b).

[2] Unless otherwise noted, the following facts are taken from plaintiffs' complaint and are presumed true for the purpose of resolving the pending motion. *Active Disposal, Inc.* v. *City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011).

1

("MSSB"). (*Id.* ¶¶ 10, 23.) The account was serviced by Chastity Peterson, a client service associate at MSSB. (*Id.* ¶ 12.)

On September 17, 2009, plaintiffs' father, who was suffering from dementia, amended the trust to provide that, should he be unable to serve as trustee, plaintiffs would be co-trustees.[3] (*Id.* ¶¶ 9, 18.) That same day, plaintiffs' father signed his powers of attorney to his second wife, Jeanne Newton. (*Id.* ¶ 24.)

On February 18, 2010, Peterson contacted Newton. (*Id.* ¶ 25.) Peterson asked Newton to use her powers of attorney to correct what Peterson believed was a mistake in the designation form naming the trust as the IRA beneficiary. (*Id.*) Peterson thought plaintiffs' father intended to list Newton, and not the trust, as the beneficiary. (*Id.*) Newton made the change. (*See id.*) According to plaintiffs, Newton did not have the authority, even with powers of attorney, to change the IRA beneficiary. (*Id.* ¶ 26.) The next day, plaintiffs' father passed away. (*Id.* ¶ 4.)

Plaintiffs bring this suit against MSSB alleging three claims: (1) breach of fiduciary duty; (2) breach of contract; and (3) tortious interference with prospective economic advantage. (*Id.* ¶¶ 27–60.) Crucial to plaintiffs' claims is their assertion that, because they were named beneficiaries of the trust, they were also the beneficiaries of the IRA account, and therefore were the third-party beneficiaries of the IRA account agreement between their father and MSSB. (*Id.* ¶¶ 20–22.)

## II.   Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). In ruling on a Rule 12(b)(6) motion, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also establish that the requested relief is plausible on its face. *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The allegations in the complaint must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. At the same time, the plaintiff need not plead legal theories. *Hatmaker* v. *Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010). "Federal pleading rules call for 'a short and plain statement of the claim showing the pleader is entitled to relief' . . . . [T]hey do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson* v. *City of Shelby*, --- U.S. ---, 135 S. Ct. 346, 346, 190 L. Ed. 2d 309 (2014) (per curiam).

---

[3] The trust was also amended in 2007, but the complaint is silent as to the effect of that amendment. (Compl. ¶ 9.)

### III. Analysis

Defendant argues that plaintiffs' claims are precluded by a liability limitation provision in the IRA account agreement between plaintiffs' father and MSSB. (Dkt. 10 at 2.) Although defendant advances other arguments in its motion to dismiss, the court need only address defendant's argument concerning the liability limitation provision.

The IRA agreement states, "By signing this Adoption Agreement, you . . . acknowledge receipt of all applicable agreements related to this account contained in this booklet and agree to the terms of such documents." (Compl. Ex. A at 3.) Defendant contends that the word "booklet" refers to the IRA Plan Booklet, which contains a liability limitation provision. (Dkt. 12 at 9.) The liability limitation provision provides, "The Participant shall indemnify and hold Custodian harmless from any liability that may arise hereunder except liability arising from the *gross negligence or willful misconduct* of the Custodian." (Dkt. 12-8 at 11, Art. 7.3 (emphasis added).) The Booklet defines "Participant" as "an individual who adopts the Plan and who makes contributions, or on whose behalf contributions are made, to an Account." (*Id.* at 4, Art. 1.11.) The Booklet also states that for the purposes of Articles 6 through 11 (which includes the liability limitation provision), "if the Participant is deceased," "'Participant' shall also mean Beneficiary." (*Id.*) Plaintiffs do not dispute the agreement's incorporation of the limited liability provision or the provision's application to plaintiffs as third party beneficiaries. Instead, plaintiffs argue that the provision does not preclude their claims because they have alleged gross negligence or willful misconduct.

As a preliminary matter, the IRA agreement contains a choice of law provision which states that the agreement shall be governed by New York law. (*Id.* at 12, Art. 11.3.) Neither party disputes the application of the choice of law provision. As used in this context, New York law defines "gross negligence" as "conduct that evinces a reckless disregard for the rights of others or 'smacks' of intentional wrongdoing." *Colnaghi, U.S.A., Ltd.* v. *Jewelers Prot. Servs., Ltd.*, 611 N.E.2d 282, 283, 81 N.Y.2d 821, 595 N.Y.S.2d 381 (1993) (citing *Sommer* v. *Fed. Signal Corp.*, 593 N.E.2d 1365, 1371, 79 N.Y.2d 540, 583 N.Y.S.2d 957 (1992)). In summarizing this standard, the United States District Court for the Southern District of New York observed that "New York Courts set the bar quite high," "'demanding nothing short of . . . a compelling demonstration of egregious intentional misbehavior evincing extreme culpability: malice, recklessness, deliberate or callous indifference to the rights of others, or an extensive pattern of wanton acts.'" *Deutsche Lufthansa AG* v. *Boeing Co.*, No. 06 CV 7667, 2007 WL 403301, at *3 (S.D.N.Y. Feb. 2, 2007) (alterations in original) (quoting *Net2Globe Int'l, Inc.* v. *Time Warner Telecom of New York*, 273 F. Supp. 2d 436, 454 (S.D.N.Y. 2003)).

Plaintiffs' allegations do not meet this standard. Indeed, plaintiffs actually allege that Peterson *believed she was correcting a mistake*: in their complaint, plaintiffs state that Peterson asked Newton to use her powers of attorney to change the designated IRA beneficiary "in order to correct what [she] believed was the Decedent's mistake in naming the Trust as the IRA beneficiary." (Compl. ¶ 25.) This does not evince a reckless disregard for the rights of others— indeed, it evinces the opposite.

Plaintiffs maintain, however, that they have met the standard because the complaint describes "instances of intentional misconduct." (Dkt. 17 at 10.) But the complaint is devoid of any facts that suggest intentional misconduct. That Peterson *intended* to contact Newton and that she *intended* to correct a mistake does not establish intentional misconduct. It is the "wrongdoing," not the act that caused the alleged harm, that must be intentional. *See Colnaghi*, 611 N.E.2d at 283 (citing *Sommer*, 593 N.E.2d at 1371). Nor do plaintiffs' bald assertions that Peterson was "grossly negligent" establish the requisite culpability: although on a motion to dismiss plaintiffs' allegations are presumed to be true, these kinds of assertions—consisting of bare legal conclusions with no factual specificity—are insufficient to survive a motion to dismiss. *McCauley* v. *City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Iqbal*, 556 U.S. at 680–81).

Plaintiffs further argue that their complaint alleges that Peterson acted with the "intent to enrich" Newton at plaintiffs' expense. (Dkt. 17 at 10.) Specifically, that Peterson "'picked a winner' of the IRA account based on who she believed should receive it." (*Id.*) There is nothing in the complaint to support this characterization.

Plaintiffs' claims for breach of fiduciary duty, breach of contract, and tortious interference with prospective economic advantage are precluded by the liability limitation provision. Defendant's motion to dismiss (dkt. 12) is granted. The case is terminated.

Date:  July 8, 2015  _____

U.S. District Judge Joan H. Lefkow